(No. 74-CC-0642—

JEAN V. DAY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 21, 1980.*

BICKLY & STERN (THOMAS STERN, of counsel), for Claimant.

DUNN, BRADY, GOEBEL, ULBRICH, MOREL & JACOB (KENNETH G.KOMBRINK, of counsel), for Respondent.

HOLDERMAN, J.

Claimant filed a claim for injuries suffered on or about 10:15 a.m. on April 19, 1972. Claimant, on the day in question, had an appointment at 10:30 a.m. with Dr. Charles Sommers, Director of Special Programs of the University Without Walls, on the premises of Chicago State University. Claimant was not a student at the University but was working full time at Harris Trust and Savings Bank.

Prior to her appointment with Dr. Sommers, Claimant allegedly entered "C" Building and either slipped or tripped in the hallway leading to the cafeteria area located in that building. She sustained injuries to her arm and leg.

After the fall in the hallway of the building, which was not lighted, Claimant went to the cafeteria area and purchased coffee. After having coffee, Claimant went to another building for her appointment with Dr. Sommers. She told the doctor she had pain in the ankle. Dr. Sommers suggested their meeting be postponed and had

his secretary contact Nurse Mae Glenn of the University Health Center. Upon being notified, Nurse Glenn called a security officer and she then proceeded directly to Dr. Sommers' office. Upon arriving at the doctor's office, Nurse Glenn checked Claimant's condition, at which time Claimant told Nurse Glenn that she had been in the cafeteria area and had slipped on something that had been spilled. Nurse Glenn asked if it was possibly liquid and she said "yes." This was recorded in Nurse Glenn's report.

Shortly after Nurse Glenn arrived in Dr. Sommers' office, the security officer, who had been contacted by her, arrived in the doctor's office. Later that same day, Claimant was taken to the emergency room of St. Bernard's Hospital where she was treated and admitted.

It is Claimant's contention that the injury was caused by Respondent's negligence in maintaining the hallway where the accident occurred which was located a short distance away from the cafeteria entrance. Claimant testified the hallway was dark and unlighted at the time of the accident.

It is Respondent's contention that Claimant has to establish five elements before she can recover: (1) that the State had a duty to design, construct or maintain the property in question; (2) that if a duty existed, the State breached that duty, *i.e.* that the State created or allowed a dangerous or defective condition to exist; (3) that the State had actual or constructive notice of the dangerous or defective condition; (4) that the dangerous or defective condition was the proximate cause of Claimant's injuries; and (5) that Claimant was free from contributory negligence.

Respondent contends that a review and analysis of the evidence presented by the parties at the hearing in

this cause demonstrates that Claimant failed to meet her burden with respect to establishing the aforesaid essential elements of her tort claim. Respondent questions whether or not a duty was owed to Claimant at the time of the accident in question, and in particular, whether the Respondent was responsible for the design, construction and maintenance of the hallway where the accident occurred. It is also Respondent's contention that Claimant presented no evidence whatsoever showing the hallway was either designed, constructed or maintained by Respondent, Board of Governors of State Colleges and Universities, State of Illinois. In fact, the only evidence presented relative to this issue was presented by Respondent when its witness, Louis Berry, testified specifically that the Board of Governors, State of Illinois, was merely a "lessee" of the building in which the accident occurred and that the owner-landlord was the Chicago Board of Education.

It is Respondent's further contention that it had no responsibility for the maintenance or repair of said premises except for carpentry and minor electrical work. Respondent cites a case in 25-CCR-209, at page 213, which states that where a Claimant has failed to establish a duty owed by Respondent to Claimant, then Claimant's claim must be denied.

Respondent further contends that if Respondent, Board of Governors, did owe a duty to Claimant, it would be a duty of care owed to a "licensee" rather than "invitee". Respondent calls attention to the fact that Chicago State University was closed for spring break on the date of the accident and that the sole purpose of Claimant's visit to the premises was to see Dr. Sommers to investigate the possibility of furthering her education. Respondent's position is that it is not an insurer against all slips or falls which occur on State property, citing 22-

CCR-29. Respondent sets forth that it is Claimant's burden to show by a preponderance of the evidence that a defective or dangerous condition existed, that there was an obvious or unordinary risk, and that Respondent either knew or should have known of the same, citing 22-CCR-29.

The evidence regarding the condition of the hallway in question is, to say the least, confusing. Claimant stated that she did not, on the day of the accident, make a thorough examination of the hallway, that she did not know what caused her fall, and that the floor was slippery because of liquid on the floor.

The evidence shows that the building where the accident took place was an old building and that repairs had been made at various times but, according to the security officer and janitor, there was nothing in the hallway at the time of the accident that would have contributed to Claimant's fall.

The record is completely devoid of any evidence showing that Respondent had any knowledge, either constructive or otherwise, of a so-called dangerous condition in the hallway.

The security officer testified that after he was advised of the accident, he went to the area of "C" building and checked for anything that could have caused the accident. He stated there was nothing sticking out of the floor nor were there any holes in the floor.,

Approximately one month after the accident in question, Claimant returned to "C" Building and the area where she had fallen. Based upon this visit, Claimant stated she had concluded she tripped over a pipe sticking out of a hole in the floor and, therefore, had filed this suit.

This is in direct contradiction to the testimony of

Louis Berry, Chicago State University Operations Engineer, who testified that on the 19th day of April, 1972, the hallway was in excellent condition and there were no objects sticking out of the floor. He further testified that he had occasion to go through the corridor of the building approximately ten times per day, that there were no holes in the floor, the floor was level, there was nothing unusual about it, and that no complaints had been brought to his attention concerning the condition of Building "C" prior to the accident in question.

Claimant having failed to meet the burden required by law, award is hereby denied.